DERBY MEADOWS UTILITY COMPANY, Appellant, v. ILLINOIS COMMERCE COMMISSION *et al.*, Appellees.

First District (5th Division)   No. 1—89—2944

Opinion filed May 8, 1992.

Petition for review of order of Illinois Commerce Commission.

Duane A. Feuer and P. Matthew Glavin, both of Ross & Hardies, of Chicago, for appellant.

Roland W. Burris, Attorney General, of Springfield (James E. Weging, Special Assistant Attorney General, of Chicago, of counsel), for appellee Illinois Commerce Commission.

Paul E. Freehling and Catherine P. Wassberg, both of Pope, Ballard, Shepard & Fowle, Ltd., of Chicago, for appellee Village of Orland Park.

DeFrees & Fiske, of Chicago, for appellee Orchard Hill Building Company.

JUSTICE LORENZ delivered the opinion of the court:

Appellant, Derby Meadows Utility Company (Derby), appeals from a final order of the Illinois Commerce Commission (Commission) denying it permanent certification to provide water and sewer services to an undeveloped subdivision located in unincorporated Cook County. The Commission based its denial of the certification, in part, on the disposition of two ancillary lawsuits which were litigated by various parties in the circuit court of Cook County. Derby filed this appeal pursuant to Supreme Court Rule 335 (134 Ill. 2d R. 335). We consider whether the Commission's final order was clearly arbitrary, unsupported by substantial evidence in the record, or contrary to an established rule of law.

We remand.

Relevant to our disposition are the following facts as disclosed by the record. Derby was and continues to be an Illinois corporation engaged in the business of owning, operating and maintaining a public water supply system and public sewage disposal system; Derby is a public utility as defined in the Illinois Public Utilities Act (the Act) (Ill. Rev. Stat. 1987, ch. 111⅔, par. 1—101 *et seq.*). In order to conduct business in the State, Derby is required to obtain a certificate of public convenience and necessity from the Illinois Commerce Commission.

The subject matter of these proceedings concerns Creekside, an undeveloped subdivision located in unincorporated Cook County. In 1979 Derby entered into a contract with the Tope Corporation, which at that time was the developer of Creekside. Derby and the Tope Corporation were owned by the same individual. The contract provided Derby with the right to provide water and sewer services to Creekside.

Derby petitioned the Commission for the required certificate. However, while the petition was pending, the Tope Corporation conveyed its rights as developer to the Inter-Continental Real Estate & Development Corporation (Inter-Continental). In turn, Derby entered into a contract with Inter-Continental on October 30, 1980 (1980 contract). This contract also provided Derby with the right to provide Creekside with water and sewer services. Specifically, the contract required Derby to construct water and sewer lines for service to the development, and it required Inter-Continental to pay a tap-in charge for connection to Derby's utility system either when Inter-Continental completed the on-site improvements or when Derby completed its trunk line, whichever occurred first.

In 1981 the Commission ruled on Derby's petition and granted a permanent certificate. (There was some confusion whether the Commission granted the petition based on Derby's contract with the Tope Corporation or with Inter-Continental.) The permanent certificate required that Derby complete, among other things, the construction of a third water well. Derby completed the required construction projects. However, Inter-Continental did not develop Creekside and Derby's permanent certificate expired after two years by operation of section 8—406(f) of the Act (Ill. Rev. Stat. 1987, ch. 111⅔, par. 8—406(f)).

In 1987 Inter-Continental conveyed its rights to develop Creekside to a third developer, the Orchard Hill Building Company (Orchard Hill). Derby provided Orchard Hill with a copy of its 1980 contract with Inter-Continental. A rider to the real estate contract between In-

ter-Continental and Orchard Hill was executed which provided that Orchard Hill rather than Inter-Continental would be obligated to pay for the connection fees and services of Derby.

However, Orchard Hill entered into an agreement with the Village of Orland Park (Village) pursuant to which the Creekside property was to be annexed to the Village; the Village would then provide the water and sewer services to Creekside. The Village, as a municipality, was not required to obtain a certificate from the Commission in order to provide services for Creekside.

To protect against losing its right to provide services for Creekside, Derby then filed two lawsuits in the circuit court of Cook County. The first suit (No. 87—CH—9418) named the Village as defendant and alleged tortious interference with Derby's 1980 contract with Inter-Continental. Derby sought an order enjoining the Village from interfering with Derby's rights to provide the water and sewer services for Creekside. The second suit (No. 88—CH—1460) named Inter-Continental and Orchard Hill as defendants and included three counts. Counts I and II alleged that Inter-Continental was liable to Derby on theories of breach of contract and promissory estoppel, respectively. Count III alleged that Orchard Hill breached the 1980 contract on a theory that the contract ran with the land.

In May 1988 the suit against the Village (No. 87—CH—9418) went to trial. The trial court, however, considered the parties' arguments without evidence or knowledge that Inter-Continental had previously conveyed its rights to Orchard Hill. Instead, Derby produced the 1980 contract with Inter-Continental. The trial court (Judge Kiley) issued findings of fact and conclusions of law and orally ruled that the 1980 contract was enforceable; that the Village tortiously interfered with the 1980 contract; and that the Village thereby caused Inter-Continental to breach. The court then enjoined the Village from further interfering with Derby's rights under the 1980 contract. The trial court would later rule, however, that these rulings were not final.

In light of the above, Derby filed another petition (the subject of this appeal) with the Commission on July 25, 1988, requesting another permanent certificate. Derby relied on Judge Kiley's conclusion that the 1980 contract was enforceable. The Village filed an appearance and moved to intervene in the Commission's proceedings. Hearings were scheduled to commence in August and September.

Meanwhile, Orchard Hill filed a motion to intervene in the lawsuit (No. 87—CH—9418) against the Village. The motion informed Judge Kiley that in 1987 it purchased the lots in Creekside and that its rights would be affected by the court's enjoining the Village from pro-

viding the water and sewer services. Judge Kiley granted the motion to intervene. Judge Kiley also stated that the court would not enter a final judgment concerning the Village's interference with the 1980 contract until the separate lawsuit against Inter-Continental was decided.

Orchard Hill then promptly filed a motion requesting that Judge Kiley allow the Village to provide the water and sewer services to Creekside during the pendency of the suit against Inter-Continental. Judge Kiley denied this motion. Instead, pursuant to Judge Kiley's recommendation, Orchard Hill entered into a temporary service agreement with Derby allowing Derby the rights to provide the then-existing six model homes with services. The temporary service agreement stated, in part, that Derby agreed to provide water and sewer services to Creekside during the pendency and until the final resolution of the lawsuit against the Village.

In light of the temporary service agreement, Derby amended its petition already filed with the Commission and requested the issuance of a temporary certificate. The Commission convened for the scheduled August and September hearings to discuss Derby's pending petition for both the permanent and temporary certificates, the status of the circuit court lawsuits, and to discuss the immediate need for services to Creekside. Orchard Hill supported Derby's request for a temporary certificate. The Village opposed the issuance of either a temporary or permanent certificate.

The Commission issued an interim order granting Derby's request for the temporary certificate which by law would expire one year after its issuance. The interim order stated in part:

> "Developer will retain title to all facilities it constructs pending the final resolution of the issues in case No. 87 CH 9418, whereupon it will transfer title to the facilities to the utility ultimately determined to be the permanent supplier of water and sewer services to the subdivision."

The interim order recognized that either Derby or the Village could become the permanent supplier.

The Village moved the Commission to reconsider the interim order, and the proceedings were continued for that purpose. The hearings on the issue of the permanent certificate were also continued.

On January 28, 1989, the Commission ruled that the interim order granting Derby the temporary certificate would remain in full force and effect. The Village filed a notice of appeal (No. 1—89—0924) urging this court to reverse the Commission's issuance of the temporary certificate. The Commission filed motions to dismiss the appeal for

lack of jurisdiction and for mootness. By the time the appellate court ruled one year later, the temporary certificate had expired by operation of law. The appeal was dismissed on grounds of mootness.

In March 1989 Orchard Hill moved the Commission to deny Derby's petition for the permanent certificate or for any extension of the temporary certificate. The president of Orchard Hill, Robert Gallagher, testified that as soon as the temporary service agreement with Derby expired, Orchard Hill intended to have the Village, not Derby, provide Creekside with water and sewer services. Orchard Hill did not want, need, nor would it accept permanent services from Derby. He testified that Orchard Hill preferred permanent services from the Village because the Village provided Lake Michigan water whereas Derby provided lesser quality well water. Moreover, he expected that Creekside would be annexed by the Village. The Commission continued the case to consider the testimony.

Meanwhile, the lawsuit against Inter-Continental was consolidated with the suit against the Village. However, Inter-Continental moved for a change of venue pursuant to which the case was reassigned to Judge Green. Inter-Continental and Orchard Hill filed motions to dismiss counts I, II and III. On June 13, 1989, Judge Green ruled that the 1980 contract between Derby and Inter-Continental was not enforceable and dismissed Inter-Continental as to both counts I and II. Judge Green further ruled that the 1980 contract did not run with the land and therefore dismissed Orchard Hill as to count III. Derby filed an appeal (No. 1—89—1612) to this court.

In view of Judge Green's rulings, the Village then moved for summary judgment in its case (which had been reassigned from Judge Kiley to Judge Reynolds), arguing that the Village could not properly be liable for tortious interference with the 1980 contract because it was unenforceable. Judge Reynolds agreed. Therefore, despite Judge Kiley's original findings of fact and conclusions of law in favor of Derby, Judge Reynolds granted summary judgment in favor of the Village. Derby filed an appeal (No. 1—89—2064) which was consolidated with No. 1—89—1612.

On August 23, 1989, the Commission entered a seven-page final order denying Derby's petition for a permanent certificate or for the extension of the temporary certificate. The order proposed that "the only remaining question is which utility should provide the service." The order then stated that "in view of the earlier holding in Derby's separate suit against Inter-Continental that the contract with Inter-Continental is unenforceable, Derby's argument that an injunction

may be entered to enforce the contract was clearly frivolous." The order also stated:

"(5) two separate circuit court judges have ruled that the contract relied upon by Derby with the developer is unenforceable;

(6) the Village of Orland Park is ready, willing and able to service Creekside with water and sewer service;

(7) Derby has failed to show that there is a need or demand for its provision of water and sewer service to Creekside; Derby has not met the requirement of section 8—406(a) of the Act;

(8) there has been no evidence showing that a permanent certificate is necessary or convenient for the public interest;

(9) the temporary certificate issued to Derby will become null and void by operation of law on September 28, 1989;

(10) the petition filed by Derby is properly denied in its entirety."

Derby's petition for rehearing was denied, and Derby filed this appeal (No. 1—89—2944).

Subsequently, on August 17, 1990, the appellate court issued an opinion (202 Ill. App. 3d 345) concerning Derby's appeals from the two circuit court rulings. As to No. 88—CH—1460, the appellate court reversed the trial court's dismissal of Inter-Continental under counts I and II; the court affirmed the trial court's dismissal of Orchard Hill under count III. As to No. 87—CH—9418, the appellate court reversed the trial court's summary judgment in favor of the Village on the issue of the tortious interference with Derby's 1980 contract with Inter-Continental.

We are now asked to address Derby's appeal from the Commission's final order.

OPINION

■■ A ruling of the Commission is entitled to great deference on judicial review and can be set aside only when it is clearly arbitrary, unsupported by substantial evidence in the record, or contrary to an established rule of law. Ill. Rev. Stat. 1987, ch. 111⅔, par. 10—201(e)(iv); *Peoples Gas, Light & Coke Co. v. Illinois Commerce Comm'n* (1988), 175 Ill. App. 3d 39, 529 N.E.2d 671.

■ In this case, we agree with the Commission that "the only remaining question is which utility should provide the service." In its final order, however, the Commission found that Derby's argument that the Village may be enjoined from providing the utility services was

frivolous because the 1980 contract was found to be unenforceable. The Commission based its findings on the decisions in the two separate circuit court cases. We note that the appellate court subsequently reversed and remanded the circuit court decisions. We have been informed by the parties that these cases remain pending before the circuit court. Therefore, Derby's argument that the Village may be enjoined from providing the utility services to Creekside remains viable. In the event that the Village is in fact enjoined, it may be necessary that the Commission grant Derby its petition for a permanent certificate.

Therefore, we hold that the Commission's final order is unsupported by the still pending circuit court cases. We remand this case to the Commission for further findings in view of the final resolution of the two circuit court cases.

Remanded.

McNULTY, P.J., and MURRAY, J., concur.